**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ENERGY TRANSFER SECURITIES LITIGATION | Civil Action No. 1:22-cv-04614-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS</u>**

**TABLE OF CONTENTS**

<u>**Page**</u>

I.  INTRODUCTION ............................................................................................................... 1

II.  BACKGROUND ............................................................................................................... 2

III.  ARGUMENT ................................................................................................................... 4

    A.  This Action Could Have Been Brought in the Northern District of Texas ..................... 4

    B.  Transfer Would be an Appropriate Exercise of Discretion. ........................................... 5

        (1)  Convenience of the Witnesses .................................................................................. 6

        (2)  Convenience of the Parties ........................................................................................ 7

        (3)  Locus of Operative Facts .......................................................................................... 8

        (4)  Location of the Documents ...................................................................................... 11

        (5)  Availability of Process ............................................................................................ 11

        (6)  Relative Means of the Parties .................................................................................. 12

        (7)  Forum's Familiarity with Governing Law ............................................................... 12

        (8)  Plaintiff's Choice of Forum .................................................................................... 13

        (9)  Trial Efficiency & Interests of Justice .................................................................... 13

IV.  CONCLUSION ............................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adair v. Microfield Graphics, Inc.*,
  2000 WL 1716340 (S.D.N.Y. Nov. 16, 2000) .................................................................... 7, 9

*Blass v. Capital Int'l Sec. Grp.*,
  2001 WL 301137 (E.D.N.Y. Mar. 23, 2001) ............................................................................ 11

*City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight,
  Inc. et al.*, 2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019) ...................................................... 10

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
  2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ................................................................. passim

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
  2010 WL 2035130 (S.D.N.Y. May 21, 2010) ......................................................................... 16

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
  2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) ......................................................................... 12

*Craig v. Am. Tuna, Inc.*,
  2022 WL 989763 (S.D.N.Y. Apr. 1, 2022) .............................................................................. 14

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
  260 F. Supp. 3d 401 (S.D.N.Y. 2017) ....................................................................... 5, 6, 7, 13

*Erickson v. Corinthian Colleges, Inc.*,
  2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ................................................................. 10, 11, 14

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
  928 F. Supp. 2d 735 (S.D.N.Y. 2013) ...................................................................................... 6

*Garity v. Tetraphase Pharms., Inc.*,
  2019 WL 2314691 (S.D.N.Y. May 30, 2019) .................................................................. 6, 9, 15

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004) ....................................................................................... 8

*In re ChannelAdvisor Corp. Sec. Litig.*,
  2015 WL 4064625 (S.D.N.Y. July 2, 2015) ...................................................................... passim

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
  418 F. Supp. 2d 164 (E.D.N.Y. 2006) .......................................................................... 7, 9, 15

*In re Nematron Corp. Sec. Litig.*,
  30 F. Supp. 2d 397 (S.D.N.Y. Dec. 7, 1998) ......................................................................... 10

*In re Vivint Solar, Inc. Sec. Litig.*,
  2020 WL 7770992 (E.D.N.Y. Dec. 30, 2020) ......................................................................... 13

*MBCP Peerlogic LLC v. Critical Path, Inc.*,
  2002 WL 31729626 (S.D.N.Y. Dec. 5, 2002) ......................................................................... 16

*Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*,
  202 F. Supp. 3d 399 (S.D.N.Y. 2016) ................................................................ 9

*Scherillo v. Dun & Bradstreet, Inc.*,
  684 F. Supp. 2d 313 (E.D.N.Y. 2010) ................................................................ 14

*Steck v. Santander Consumer USA Holdings Inc.*,
  2015 WL 3767445 (S.D.N.Y. June 17, 2015) ................................................. 7, 10

**Statutes**

15 U.S.C. § 78aa(a) ............................................................................................... 5

28 U.S.C. § 1404 ............................................................................................... 1, 5

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. 2

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................... 8

**Regulations**

17 C.F.R. 240.10b-5 ............................................................................................. 3

Defendants Energy Transfer LP ("Energy Transfer"), Kelcy L. Warren, Thomas E. Long, Marshall S. McCrea III, Bradford D. Whitehurst, John W. McReynolds, and Matthew S. Ramsey (the "Individual Defendants," and together with Energy Transfer, "Defendants") hereby move to transfer this action, pursuant to 28 U.S.C. § 1404 ("§ 1404"), to the United States District Court for the Northern District of Texas, Dallas Division.

## I.      INTRODUCTION

Defendants respectfully request that this action be transferred to the United States District Court for the Northern District of Texas, Dallas Division, where the conduct at issue in this case occurred, the Individuals Defendants primarily work and reside, and the vast majority of relevant witnesses and evidence are located.

This is a putative securities fraud class action.  Defendants are Energy Transfer, a publicly traded midstream oil and gas limited partnership headquartered in Dallas, Texas, and six of Energy Transfer's current or former executives, who work or reside in Dallas.  Energy Transfer's SEC statements are principally drafted and approved in Texas and issued from Energy Transfer's corporate headquarters in Dallas.  Lead Plaintiffs are two institutional investors domiciled in New Mexico and have no material connection with the Southern District of New York.

In sum, this "is a garden-variety federal securities fraud class action involving a named Plaintiff that has no particular connection to this District and Defendants who have moved to transfer this action to the District in which the corporate Defendant is headquartered and where the bulk of the alleged wrongdoing occurred." *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *7 (S.D.N.Y. Apr. 30, 2015).[1]  "Under such circumstances…courts in this District regularly exercise their discretion to grant motions to transfer."  *Id.*; *see also In re*

---

[1] Unless otherwise noted, all emphases are added, and all citations are omitted.

1

*ChannelAdvisor Corp. Sec. Litig.*, 2015 WL 4064625, at \*2 (S.D.N.Y. July 2, 2015) ("[C]ourts routinely transfer securities cases to the issuer's district."). As there is no basis for a different result here, Defendants request that the Court grant its motion and transfer this action to the Northern District of Texas.

## II.   BACKGROUND

On June 3, 2022, Plaintiff Mike Vega filed a putative securities class action complaint in the Southern District of New York against Energy Transfer and a handful of its current or former directors and executives. Shortly thereafter, a number of Energy Transfer unitholders filed motions seeking to be appointed lead plaintiff in this action. *See* Dkts. 11-25. On August 9, 2022, the various plaintiffs filed a stipulation and proposed order with the Court acknowledging that the New Mexico State Investment Council and the Public Employees' Retirement Association of New Mexico, together the "New Mexico Funds," should be appointed lead plaintiffs because they allegedly suffered the largest financial loss during the proposed class period and otherwise satisfy the Rule 23 requirements at this stage. *See* Dkt. 26. The next day, this Court granted the proposed order, formally selecting the New Mexico Funds as lead plaintiffs (hereinafter, "Lead Plaintiffs"). Lead Plaintiffs filed an Amended Complaint on September 30, 2022. *See* Dkt. 44.

The Amended Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), asserting that Defendants withheld material information and/or made material misstatements in earnings calls and SEC filings concerning (1) the "construction, completion timetable, and cost of the Rover Pipeline" and (2) a FERC investigation regarding Energy Transfer's drilling practices which allegedly caused an "inadvertent release" of drilling fluid into the Tuscarawas River in Ohio. Am. Compl. ¶¶ 3-28. The "Rover Pipeline is an approximately 720-mile-long natural gas pipeline extending from

northwestern West Virginia and southwestern Pennsylvania to central Michigan." *Id.* ¶ 3.  A map

depicting the footprint of the Rover Pipeline is set forth below:[2]



As the Amended Complaint makes clear, this case has no material connection to New York.

The primary defendant, Energy Transfer, is headquartered in Dallas, Texas.  Ratliff Decl. ¶ 2.

Energy Transfer's SEC statements are principally drafted and approved in Texas and issued from

Energy Transfer's corporate headquarters in Dallas. *Id.* ¶ 10.  The Individual Defendants work in

Energy Transfer's Dallas office, and Ramsey, who is retired, resides in Dallas. *Id.* ¶¶ 5-10; Am.

Compl. ¶ 41.  The Rover Pipeline does not run through New York.  None of the alleged

---

[2] Available here: https://rovermessenger.energytransfer.com/ipost/ROVER.

3

misstatements were issued or made in New York.  It would be far more efficient and convenient to conduct this case in the Northern District of Texas than in this Court.  For the reasons set forth below, the Court should grant Defendants' motion to transfer this case to the Northern District of Texas.

## III.    ARGUMENT

The federal transfer statute, 28 U.S.C. § 1404(a), provides that:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The purpose of § 1404 is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Dell*, 2015 WL 12659925, at *5.

Courts in the Second Circuit "undertake a two-step inquiry to decide motions to transfer venue under § 1404(a)."  *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017).  First, the court must determine "'whether the action could have been brought in the transferee district.'"  *Id.*  If so, then the Court must determine "whether transfer would be an appropriate exercise of the Court's discretion" when considering a number of factors. *Id.*  As set forth below, both steps are easily satisfied.

### A.    This Action Could Have Been Brought in the Northern District of Texas.

The Amended Complaint asserts Defendants committed securities fraud under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Am. Compl. ¶ 2. The Exchange Act provides that securities fraud actions may be brought where "the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa(a).  Defendant Energy Transfer is headquartered in Dallas, Texas, and the Individual Defendants either work at Energy Transfer's

4

Dallas office or reside in Dallas.  Am. Compl. ¶¶ 2, 12; Ratliff Decl. ¶¶ 2, 5-10.  Therefore, this action could have been brought in the Northern District of Texas.  *See Dell*, 2015 WL 12659925, at *3 (holding venue was proper where defendant corporation is headquartered).

> ### B.       Transfer Would be an Appropriate Exercise of Discretion.

Courts in this Circuit next consider whether transfer is a valid exercise of judicial discretion.  *See Enigma*, 260 F. Supp. 3d at 407.  To do so, they balance nine factors:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013).  Not all of the factors are weighted equally.  For instance, the convenience of the witnesses and the locus of operative facts are viewed as the most important factors.  *See Enigma*, 260 F. Supp. 3d at 409-10.  And where, as here, Lead Plaintiffs purport to represent a nationwide class, "courts afford little weight to a plaintiff's choice of forum" because "members of the class are dispersed throughout the nation."  *Garity v. Tetraphase Pharms., Inc.*, 2019 WL 2314691, at *2-3 (S.D.N.Y. May 30, 2019).

Courts recognize that these factors frequently weigh in favor of transferring securities actions to the district where the issuer is headquartered—which, in this case, is the Northern District of Texas, Dallas Division.  *See, e.g.*, *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (noting that although there is "no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered…as a practical matter, such transfers are routine").

### (1) Convenience of the Witnesses

The convenience of the witnesses heavily weighs in favor of a transfer. While no single factor is determinative, "[t]he convenience of witnesses…has often been described as the *single most important* § 1404(a) factor." *Enigma*, 260 F. Supp. 3d at 409. "In a securities fraud case, the key witnesses are the officers and employees of the corporate defendant who participated in drafting and disseminating the allegedly false statements at issue." *Dell*, 2015 WL 12659925, at *5; *Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at *9 (S.D.N.Y. June 17, 2015) (same). This is because "[i]t is well known that trials in securities class actions focus almost entirely on the defendants' conduct." *ChannelAdvisor*, 2015 WL 4064625, at *2; *see also Adair v. Microfield Graphics, Inc.*, 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000) (noting the key issues in a securities class action are likely to be the "accuracy of [] statements and defendants' state of mind").

Here, the Defendants and other likely witnesses are overwhelmingly located in or near the Northern District of Texas. Specifically, the Individual Defendants, who the Amended Complaint alleges "made and/or controlled the contents of [Energy Transfer's] public statements during the Class Period," either work in Energy Transfer's Dallas headquarters or maintain residences in the Dallas area. Am. Compl. ¶¶ 36-42, 125; Ratliff Decl. ¶¶ 5-10. The Northern District of Texas is also where (1) Energy Transfer's investor relations department is based; (2) "most of the witnesses"—in addition to the Individual Defendants—"who would have knowledge as to Energy Transfer's public statements and disclosures work and reside;" and (3) many other executives and high-ranking employees work and reside. Ratliff Decl. ¶¶ 3, 9-10. "[T]he [relevant] inquiry is not whether the party witnesses could easily get to New York; the inquiry is which of the two forums is more convenient." *ChannelAdvisor*, 2015 WL 4064625, at *2. Here, there can be no genuine dispute that the more convenient forum is the Northern District of Texas. *See id.*

6

By contrast, because representatives of Lead Plaintiffs, two institutional investors based out of New Mexico (Am. Compl. ¶¶1, 33-34), do not live in either "the current [or] transferee forum" and will "have to travel regardless of venue," the residences of their testifying witnesses are "irrelevant." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 288 (S.D.N.Y. 2004). The same is true with respect to potential third-party witnesses, including the third-party contractors hired by Energy Transfer to assist with the construction of the Rover pipeline in Ohio, who upon information and belief, do not reside in New York.

In sum, the convenience of the witnesses decidedly favors a transfer to Texas.

### (2)    Convenience of the Parties

The convenience of the parties also weighs strongly in favor of a transfer. Energy Transfer is headquartered in the Northern District of Texas (Am. Compl. ¶ 2), and the Individual Defendants either work in Energy Transfer's Dallas office or maintain residences in the Dallas area. Ratliff Decl. ¶¶ 5-10; *see Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016) ("When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices."). Furthermore, because all of the Individual Defendants are current officers and directors of Energy Transfer (Am. Compl. ¶¶ 36-41), this factor "weighs particularly heavily in favor of transfer" because "[l]engthy [trial] proceedings in New York" could "lead to some disruption to [Energy Transfer's] day-to-day operations." *Dell*, 2015 WL 12659925, at *5; *see also Garity*, 2019 WL 2314691, at *4 ("A New York trial may disrupt [Defendant's] business operations since some individual defendants are managing officers.").

Moreover, where, as here, Lead Plaintiffs are not located in either the current forum or in the proposed transferee forum, their "convenience is not a factor in determining whether [one forum] or [another] would be [] more convenient." *Dell*, 2015 WL 12659925, at *5; *In re Hanger*,

7

418 F. Supp. 2d at 169 ("Since none of the lead plaintiffs reside in New York, they cannot claim that New York is the more convenient forum for them.").[3]  This is all the more true where, as here, Lead Plaintiffs purport to represent a nationwide class, "some (if not most) of [which] will be inconvenienced" regardless.  *In re Hanger*, 418 F. Supp. 2d at 169.  Thus, the "residence of a class representative" can therefore "be discounted by a court when weighing transfer factors."  *Adair*, 2000 WL 1716340, at *2; *see also Steck*, 2015 WL 3767445, at *9 (same).

This factor decisively favors transfer.

### (3)    Locus of Operative Facts

The locus of operative facts is also a "primary factor" that "substantially favors transfer from this district" because none "of the operative facts arose in the Southern District of New York."  *Enigma*, 260 F. Supp. 3d at 410.  Well-settled precedent establishes that the "locus of operative events in a securities action is where the alleged misrepresentations were made."  *Erickson v. Corinthian Colleges, Inc.*, 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. Dec. 7, 1998) ("Misrepresentations…are deemed to 'occur' in the district where they are transmitted or withheld.").  Energy Transfer's SEC filings are principally drafted and approved in Texas, and issued from Energy Transfer's headquarters in the Northern District of Texas.  Ratliff Decl. ¶ 10.  The Amended Complaint does not allege that any of the relevant statements at issue in this litigation occurred in New York.  This Court has held that this factor weighs in favor of a transfer when most of the public statements at issue in the litigation were issued from defendant's non-New York headquarters.  *See City of Birmingham Firemen's and Policemen's Supplemental*

---

[3] Though Lead Plaintiffs' counsel, Robbins Geller Rudman & Dowd LLP, maintains a New York but not a Dallas office, the "convenience of counsel is not an appropriate factor to consider on a motion to transfer."  *Garity*, 2019 WL 2314691, at *5.

*Pension System v. Pluralsight, Inc. et al.*, 2019 WL 12496341, at *1 (S.D.N.Y. Oct. 24, 2019) (Hellerstein, J.) (granting transfer).

Though the Amended Complaint makes a modest attempt to create ties to this District, similar meager connections have been repeatedly rejected by courts as being far too insignificant to shift the locus of operative facts to the Southern District of New York in securities fraud actions.

*First*, Lead Plaintiffs contend that "Energy Transfer units trade on the New York Stock Exchange" and "several securities analysts" who "report on Energy Transfer to the market" "conduct their business in this district." Am. Compl. ¶ 31. In rejecting this exact argument in similar securities fraud cases, this Court ruled "Defendants' alleged misrepresentations and omissions are the gravamen of this case, and contrary to Plaintiff's arguments, the locus of operative facts is not shifted to New York merely because Dell stock was traded on the NASDAQ and certain analysts who followed Dell were based in New York." *Dell*, 2015 WL 12659925, at *6; *see also Pluralsight*, 2019 WL 12496341, at *2 (holding defendant's "listing on the NASDAQ" does "not change the locus of the dispute"); *Erickson*, 2013 WL 5493162, at *6-7 (finding connection to the Southern District of New York was "minimal" where defendant traded on the NASDAQ and was followed by many analysts based in New York).

*Second*, Lead Plaintiffs' supposition that "some" Energy Transfer investors, including financial institutions who purportedly were "most harmed by Defendants' fraudulent conduct" "reside in this judicial district" is equally unavailing. Am. Compl. ¶ 31. "[T]he purchase of shares in New York does not make this district a forum which has significant contact with the operative facts." *Blass v. Capital Int'l Sec. Grp.*, 2001 WL 301137, at *5 (E.D.N.Y. Mar. 23, 2001) (granting transfer) ; *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (same).

*Third*, the Complaint asserts Energy Transfer "has several subsidiaries and affiliates registered to do business in New York," the "Rover Pipeline was constructed to transport natural gas" from the Marcellus and Utica shale formations (and such formations are partially located into New York), and Energy Transfer "owns and operates 162 miles of refined products pipelines in New York." Am. Compl. ¶¶ 3, 31, 35, 44. These minimal contacts to New York generally—not even this District specifically—are woefully inadequate to shift the locus of operative facts.

The Complaint concedes that the Rover Pipeline does not run through New York and that the site of the inadvertent release of drilling fluid occurred in Ohio. *Id.* ¶¶ 3, 7. Similarly, the Complaint does not (and cannot) contend that the 162 miles of pipelines Energy Transfer operates in New York are connected to the allegations in the Amended Complaint. Moreover, Energy Transfer "owns and operates" approximately 43,715 miles of pipelines—meaning its New York presence constitutes ***less than 0.4%*** of its total footprint. Am. Compl. ¶ 44. Courts have ruled such a minor business presence in a forum state does not alter the transfer analysis, particularly where the claims at issue concern statements issued from a company's headquarters in a different district. *E.g.*, *Steck*, 2015 WL 3767445, at *5 (discounting significance of a defendant's business in the forum state where it constitutes "only a minute fraction" of the defendant's total business across the United States); *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019) (granting transfer to Illinois even though ~20% of the defendant's total employees were based in New York) . Finally, Plaintiffs point to the fact that the Marcellus and Utica shale formations are partially located in New York state as an additional means of establishing a connection to this District. Am. Compl. ¶ 3. Plaintiffs are grasping at straws: the Rover Pipeline does not run through New York. *Supra* §II. Regardless, the location of these New York shale formations is irrelevant to the gravamen of this action: whether

10

Defendants issued materially misleading public statements regarding the construction of the Rover Pipeline and a related FERC investigation.

In sum, this factor strongly supports transfer.

### (4)    Location of the Documents

The location of the documents also favors transfer. "Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which are in the defendants' possession." *In re Vivint Solar, Inc. Sec. Litig.*, 2020 WL 7770992, at \*3 (E.D.N.Y. Dec. 30, 2020). Because Energy Transfer is headquartered in Dallas, the Individual Defendants either work or reside in Dallas, and Energy Transfer's two largest offices are located in Texas, this factor weighs in favor of a transfer to the Northern District of Texas. *See* Ratliff Decl. ¶¶ 4-10. At worst, this factor is neutral when considering that the electronic submission of documents and should not "affect the transfer analysis." *Enigma*, 260 F. Supp. 3d at 412.

### (5)    Availability of Process

Courts also consider the availability of process to compel the attendance of unwilling witnesses in determining whether a transfer is proper. Under the Federal Rules of Civil Procedure, a district court's power to compel third-party witnesses to attend a deposition or trial is limited to "100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Here, however, this factor is neutral because Defendants are not aware of any potential third-party witnesses "likely to present attendance challenges," and thus, the availability of process "does not materially favor or disfavor transfer." *See Enigma*, 260 F. Supp. 3d at 410.

11

### (6)    Relative Means of the Parties

While courts can consider the financial disparity between the parties, "absent demonstration of an undue burden on the plaintiff class, this factor is neutral in a securities class action." *Erickson*, 2013 WL 5493162, at *7.  It is unlikely that the New Mexico Funds, two large institutional investors with ample resources, will be able to credibly establish undue burden considering the New Mexico State Investment Council oversees a "$34 billion permanent endowment" and the Public Employees Retirement Association of New Mexico "administers $18 billion in retirement funds."  *See* Declaration of Brian McMath, ¶ 2, in support of the New Mexico Funds' Appointment as Lead Counsel (Dkt. 24, Exhibit 4).

Moreover, because the New Mexico Funds are not New York residents, the relevant question is whether it would be "prohibitively expensive" to litigate in the transferee forum as compared to the current forum.  *See Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010) (granting transfer where, among other reasons, plaintiff was "unable to demonstrate a substantial hardship (financial or otherwise) caused by the transfer").  Any such contention would be implausible, given the proximity of New Mexico to the Northern District of Texas.  In sum, because the New Mexico Funds will be unable to meet this burden, this factor is neutral.

### (7)    Forum's Familiarity with Governing Law

"[T]he putative forum's familiarity with the governing law is one of the least important factors in determining a motion to transfer," finding applicability primarily when a suit implicates complex questions of state or foreign law.  *Craig v. Am. Tuna, Inc.*, 2022 WL 989763, at *5 (S.D.N.Y. Apr. 1, 2022).  Where, as here, a lawsuit arises under federal law, this factor is deemed neutral because all district courts are considered to be "equally familiar" with such laws.  *In re*

12

*Hanger*, F. Supp. 2d at 170; *see also ChannelAdvisor*, 2015 WL 4064625, at *3 ("[E]very federal court is presumed equally capable of applying federal law.").

### (8)    Plaintiff's Choice of Forum

Courts in this District ascribe "little weight" to a plaintiff's choice of forum in securities class actions where, as here, Lead Plaintiffs purport to represent a nationwide class of "geographically dispersed" shareholders.  Am. Compl. ¶ 169 (noting the proposed class contains "hundreds or thousands of members" and is "geographically dispersed"); *Garity*, 2019 WL 2314691, at *2-3; *see also ChannelAdvisor*, 2015 WL 4064625, at *1 ("[A] plaintiff's choice of forum 'is afforded little weight' in a purported class action, as here, where 'numerous plaintiffs [are] each possibly able to make a showing that a particular forum is best suited.'").  Moreover, the choice to file in this District carries even less weight because the New Mexico Funds are not New York residents.  *See ChannelAdvisor*, 2015 WL 4064625, at *1 (granting transfer and finding plaintiff's choice of forum even "less compelling" where, as here, "plaintiffs choose a forum that is not their home district"); *Pluralsight*, 2019 WL 12496341, at *2 (same).

### (9)    Trial Efficiency & Interests of Justice

Finally, the interests of justice weigh in favor of a transfer to the Northern District of Texas.  This case, like *Dell*, "is a garden-variety federal securities fraud class action involving a named Plaintiff that has no particular connection to this District and Defendants who have moved to transfer this action to the District in which the corporate Defendant is headquartered and where the bulk of the alleged wrongdoing occurred.  Under such circumstances…courts in this District regularly exercise their discretion to grant motions to transfer."  2015 WL 12655925, at *7; *ChannelAdvisor*, 2015 WL 4064625, at *4 (similar).  Dissemination of the alleged misstatements occurred in Dallas, and the important witnesses and material documents are likewise located there.  Ratliff Decl. ¶¶ 4-10. Neither Lead Plaintiffs nor any other significant aspect of the case has any

13

material connection to New York; indeed, Energy Transfer's two largest offices are located in Texas. *Id.* ¶ 4; *see City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *5 (S.D.N.Y. May 21, 2010) (holding that when "the material events" and "most of the witnesses and documents….are located in the transferee forum, the interests of justice and judicial efficiency support a transfer"). Finally, a transfer would not cause undue delay because the action is still in its infancy. *See MBCP Peerlogic LLC v. Critical Path, Inc.*, 2002 WL 31729626, at *1 (S.D.N.Y. Dec. 5, 2002).

In sum, the above considerations demonstrate a transfer is in the interests of justice.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant this motion and transfer this action to the United States District Court for the Northern District of Texas, Dallas Division.


Dated:  October 7, 2022

14

VINSON & ELKINS LLP

  _/s/ Christopher E. Duffy_____
Christopher E. Duffy
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 237-0000
cduffy@velaw.com

Michael Holmes (*pro hac vice* application forthcoming)
Craig E. Zieminski (*pro hac vice* application forthcoming)
Robert Ritchie (*pro hac vice* application forthcoming)
Trammel Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700
mholmes@velaw.com
czieminski@velaw.com
rritchie@velaw.com

*Attorneys for Defendants*

15