UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re ENERGY TRANSFER LP SECURITIES LITIGATION | : <br> : <br> : <br> : | Civil Action No. 1:22-cv-04614-AKH <br><br> <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>   ALL ACTIONS. | : <br> : <br> : <br> : <br> : <br> x | LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS |

4874-9895-4042.v1

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ..................................................................................................3

III.    ARGUMENT.......................................................................................................4

    A.      Legal Standard ........................................................................................4

    B.      Defendants Have Not Satisfied Their Heavy Burden of Establishing the
    Propriety of the Requested Transfer ........................................................6

        1.      Lead Plaintiffs' Choice of Forum Weighs Against Transfer ......................6

        2.      Because Defendants Have Meaningful Contacts with New York,
        and Many of the Other Operative Facts Took Place Outside of
        Texas, the Locus-of-Operative-Fact Factor Is at Best Neutral ....................8

        3.      Defendants Concede that the Proposed Forum's Familiarity with
        Governing Law Is "Neutral"........................................................................11

        4.      Defendants Concede that the Relative Means of the Parties Is
        "Neutral" ......................................................................................................11

        5.      Defendants Concede that the Location of Documents Is "Neutral
        When Considering . . . the Electronic Submission of Documents"...........12

        6.      The Convenience of the Parties Does Not Weigh in Favor of
        Transfer .......................................................................................................13

        7.      The Convenience of the Witnesses Does Not Weigh in Favor of
        Transfer .......................................................................................................14

        8.      Defendants Concession that the Court's Ability to Compel the
        Attendance of Unwilling Witnesses Is "Neutral" Obscures the
        Reality that This Factor Affirmatively Supports Keeping the
        Lawsuit in This District ...............................................................................17

        9.      The Efficiency and Interests of Justice Factors Are Neutral .....................17

IV.     CONCLUSION...................................................................................................18

4874-9895-4042.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Albert Fadem Tr. v. Duke Energy Corp.*,
  214 F. Supp. 2d 341 (S.D.N.Y. 2002)...............................................................................*passim*

*Allegheny County Employees' Retirement System v. Energy Transfer LP*,
  No. 2:20-CV-200 (E.D. Pa.) .............................................................................................1

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
  2020 WL 1888950 (E.D. Pa. Apr. 16, 2020) ...................................................................1, 2

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000).................................................................................6

*City of Birmingham Fireman's & Policemen's Suppl. Pension Sys. v. Pluralsight, Inc.*,
  2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019)...............................................................10

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
  2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015)................................................................14

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
  2010 WL 2035130 (S.D.N.Y. May 21, 2010) ...............................................................17, 18

*Colour & Design v. U.S. Vinyl Mfg. Corp.*,
  2005 WL 1337864 (S.D.N.Y. June 3, 2005) ...................................................................12

*D.H. Blair & Co., Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006)...............................................................................................6

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002)...............................................................................................7

*EasyWeb Innovations, LLC v. Facebook, Inc.*,
  888 F. Supp. 2d 342 (E.D.N.Y. 2012) .............................................................................12

*Erickson v. Corinthian Colls., Inc.*,
  2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013).....................................................................10

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir. 1978)..............................................................................................14

*Falconwood Fin. Corp. v. Griffin*,
  838 F. Supp. 836 (S.D.N.Y. 1993)....................................................................................15

**Page**

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
  865 F.2d 513 (2d Cir. 1989)......................................................................................5

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*,
  814 F.3d 652 (2d Cir. 2016)......................................................................................7

*GPA Inc. v. Liggett Grp., Inc.*,
  1994 WL 537017 (S.D.N.Y. Oct. 4, 1994).................................................8, 13, 14, 15

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)..............................................................................................2, 6

*In re ChannelAdvisors Corp. Sec. Litig.*,
  2015 WL 4064625 (S.D.N.Y. July 2, 2015) ...............................................................16

*In re Geopharma, Inc.*,
  2005 WL 1123883 (S.D.N.Y. May 11, 2005) ......................................................7, 8, 13, 16

*In re Vivint Solar, Inc. Sec. Litig.*,
  2020 WL 7770992 (E.D.N.Y. Dec. 30, 2020) .........................................................12

*Lesser ex. rel. Lesser v. Camp Wildwood*,
  2002 WL 1792039 (S.D.N.Y. Aug. 2, 2002)..................................................14, 15

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*,
  599 F.3d 102 (2d Cir. 2010).............................................................. *passim*

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  416 F.3d 146 (2d Cir. 2005)....................................................................2, 18

*Prentice-Hall Corp. Sys., Inc. v. Ins. Co. of N.A.*,
  81 F.R.D. 477 (S.D.N.Y. 1979) ..............................................................................15

*Saccoccio v. Relin, Goldstein & Crane, LLP*,
  2007 WL 1334970 (S.D.N.Y. May 7, 2007) .............................................................6

*Scherillo v. Dun & Broadstreet, Inc.*,
  684 F. Supp. 2d 313 (E.D.N.Y. 2010) .....................................................................11

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
  322 F. Supp. 2d 505 (S.D.N.Y. 2004)......................................................................15

*Secs. Exch. Comm'n v. Milton*,
  2022 WL 3156180 (S.D.N.Y. Aug. 8, 2022).................................................. *passim*

4874-9895-4042.v1

**Page**

*Shulof v. Westinghouse Elec. Corp.*,
    402 F. Supp. 1262 (S.D.N.Y. 1975)....................................................................................15

*Steck v. Santander Consumer USA Holdings Inc.*,
    2015 WL 3767445 (S.D.N.Y. June 17, 2015) ...................................................................10

*Steinberg & Lyman v. Takacs*,
    690 F. Supp. 263 (S.D.N.Y. 1988)......................................................................................2

*Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*,
    818 F. Supp. 2d 770 (S.D.N.Y. 2011)...........................................................................6, 16

*Tross v. Ritz Carlton Hotel Co., LLC*,
    928 F. Supp. 2d 498 (D. Conn. 2013).................................................................................5

*United States v. Ferguson*,
    2007 WL 4556625 (D. Conn. Dec. 20, 2007)...................................................................17

*United States v. Ferguson*,
    676 F.3d 260 (2d Cir. 2011)...........................................................................................9, 17

*Zangiacomi v. Saunders*,
    714 F. Supp. 658 (S.D.N.Y. 1989)....................................................................................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78aa(a)................................................................................................................................2
    §1391(b) ...........................................................................................................................5, 6
    §1391(b)(2) ..........................................................................................................................5

28 U.S.C.
    §1404...................................................................................................................................1
    §1404(a) ...............................................................................................................................5

4874-9895-4042.v1

Lead Plaintiffs New Mexico State Investment Council and Public Employees Retirement Association of New Mexico respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue to the Northern District of Texas (ECF 47) ("Motion") and Their Memorandum of Law in Support Thereof (ECF 48) ("Mem.").[1]

## I.    INTRODUCTION

If recent history is any guide, it is the position of Energy Transfer and the Individual Defendants that they should be able to litigate ***any*** securities class action against them in the Northern District of Texas ("N.D. Tex."), where their headquarters is located, regardless of the circumstances and regardless of the plaintiff's preference.  For example, in *Allegheny County Employees' Retirement System v. Energy Transfer LP*, No. 2:20-CV-200 (E.D. Pa.) – an ongoing securities class action asserting claims under §§10(b) and 20(a) of the Exchange Act in the Eastern District of Pennsylvania – Energy Transfer and two individual defendants moved to transfer the case to the N.D. Tex. under 28 U.S.C. §1404, just as they are attempting to do here.  There, the presiding court roundly rejected that effort.  *See generally Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 1888950 (E.D. Pa. Apr. 16, 2020).

Here, Defendants are facing potential securities-fraud liability for failing to disclose, *inter alia*, Energy Transfer's responsibility for an environmental disaster in Ohio that resulted in severe operational delays, billions of dollars in cost overruns, and the recommendation of a $40 million civil penalty against the Company by the Federal Energy Regulatory Commission (the "FERC").  They seek to have this case transferred to the N.D. Tex., even though: (1) this District is Lead

---

[1]    "Defendants" refers collectively to Energy Transfer LP ("Energy Transfer") and individual defendants Kelcy L. Warren, Thomas E. Long, Marshall S. McCrea III, Bradford D. Whitehurst, John W. McReynolds, and Matthew S. Ramsey (the "Individual Defendants").  Unless otherwise stated, capitalized terms used herein have the same meaning as set forth in the Amended Complaint for Violations of the Federal Securities Laws (ECF 44) (the "Complaint").

- 1 -

Plaintiffs' chosen forum; (2) Energy Transfer's general partner and the subsidiary at the heart of the misconduct alleged were registered to do business in New York (¶35)[2]; (3) Energy Transfer units trade on the NYSE (¶31); (4) Defendants' misrepresentations were disseminated nationwide, including in New York; (5) securities analysts who conduct their business in this District may be called upon to give lay testimony on how investors understood Defendants' representations (*id.*); and (6) the undisclosed environmental misconduct at issue occurred in Ohio – nowhere near Texas.

But even Defendants do not dispute that this District is a proper, available venue for this case. *See* 15 U.S.C. §78aa(a) (allowing cases to be brought "in the district wherein any act or transaction constituting the violation occurred"); *see also Secs. Exch. Comm'n v. Milton*, 2022 WL 3156180, at *6 (S.D.N.Y. Aug. 8, 2022) (Hellerstein, J.) (same; denying transfer). Rather, Defendants claim that because it would be more convenient for them to litigate in the N.D. Tex., the case should be transferred there. Mem. at 4. That, however, is not their choice to make.

Courts, including this one, have long recognized that they "must give substantial deference to the plaintiff's choice of venue." *Milton*, 2022 WL 3156180, at *7; *see also Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 266 (S.D.N.Y. 1988) (same; citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "[I]t is generally understood that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005). The burden is on Defendants to establish the need for a transfer by "'clear and convincing evidence.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

---

[2] All "¶__" and "¶¶__" references herein are to the Complaint. Additionally, unless otherwise noted, emphasis is added and internal citations are omitted throughout.

4874-9895-4042.v1

Because Defendants have failed to meet their heavy burden of justifying a transfer, and indeed acknowledge that most of the factors considered on such a motion are at best neutral, the Motion should be denied.

## II.    BACKGROUND

This securities class action addresses Defendants' false and misleading statements concerning: (i) the costs and construction deadlines for Energy Transfer's Rover Pipeline; (ii) the environmental disaster caused by Energy Transfer's construction crew in Ohio (the "April 2017 Environmental Disaster"); and (iii) the investigation into that disaster by the FERC.  ¶3.

Energy Transfer provides energy-related services in the United States and China and owns and operates pipelines in New York.  ¶44.  Throughout the Class Period, Energy Transfer's partnership units traded on the NYSE, a securities exchange located in the Southern District of New York (the "S.D.N.Y.").  ¶31.  Both Energy Transfer's general partner and its subsidiary responsible for the Rover Pipeline were registered to do business in New York.  ¶35.  On information and belief, members of the proposed class reside in this District.  ¶31.

The Rover Pipeline is an approximately 720-mile pipeline that transports natural gas from the Marcellus and Utica shale supplies, which are located in several states (including New York), through West Virginia, Pennsylvania, Ohio, and Michigan to outlets that distribute gas across the United States.  ¶3.  The April 2017 Environmental Disaster involved a "frac out," or "inadvertent release," of roughly two million gallons of contaminated drilling fluid, which caused severe pollution near the Tuscarawas River in Stark County, Ohio.  ¶7.  Unbeknownst to investors, the FERC, which is located in Washington, D.C., launched an investigation into the April 2017 Environmental Disaster as early as June 1, 2017.  ¶83.

4874-9895-4042.v1

Throughout the Class Period, on earnings calls and in financial statements filed with the SEC, Defendants made disclosures that gradually and incrementally brought investors closer to the truth about the Rover Project's timeline and cost, the FERC's investigation, and the impact those had on Energy Transfer. ¶¶99-101, 113-115, 123-124, 126, 144-146, 149, 151-154, 159, 163-166. All told, investors learned the Rover Project cost nearly twice as much – over $6.7 billion – and took nearly twice as long to complete as Defendants initially represented. ¶¶22, 157.

But investors remained in the dark concerning the gravity of the April 2017 Environmental Disaster and the FERC's investigation until December 16, 2021, when the FERC publicly issued an Order to Show Cause and Notice of Proposed Penalty (the "FERC Order") to Energy Transfer in Washington, D.C. ¶23. The FERC Order required Energy Transfer to show cause "why it should not be found to have violated" the Natural Gas Act, the FERC's regulations, and other environmental regulations for Energy Transfer's involvement in and contribution to the April 2017 Environmental Disaster. ¶25. The FERC Order also recommended a $40 million fine, which constituted "a departure" from the FERC's Penalty Guidelines. *Id.*

Only then did investors learn that Energy Transfer, through Rover, intentionally added diesel fuel and other toxic substances and unapproved additives to the drilling mud used at the Tuscarawas River drilling site. ¶26.

## III.    ARGUMENT

### A.    Legal Standard

Defendants do not – and cannot – contest that Lead Plaintiffs properly brought this case in this District. *See, e.g.*, *Milton*, 2022 WL 3156180, at *6 ("'any nontrivial act in the forum district which helps accomplish a securities law violation is sufficient to establish venue'"). Rather, they

4874-9895-4042.v1

contend that, despite being an appropriate venue, this District is inconvenient, and that transfer is therefore appropriate.

Under 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, . . . a district court *may* transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding whether to transfer a case, courts "undertake a two-step inquiry." *Milton*, 2022 WL 3156180, at *7. They must first determine whether the action could have been brought in the transferee district – here, the N.D. Tex. – and if so, whether transfer would be an appropriate exercise of the Court's discretion. *Id.*

No one questions that, under 15 U.S.C. §1391(b), Lead Plaintiffs could have brought this case in the N.D. Tex.[3] To satisfy the second step, however, ***Defendants must meet the heavy burden*** of demonstrating by "'clear and convincing evidence'" that a transfer is necessary. *N.Y. Marine*, 599 F.3d at 113-14; *see also Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 504 (D. Conn. 2013) ("The party seeking the transfer carries a heavy 'burden of making out a strong case for transfer.'") (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).[4]

Courts in this Circuit consider multiple factors in determining whether a transfer of venue is warranted, including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of

---

[3]    15 U.S.C. §1391(b)(2), for example, permits a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

[4]    Thus, although Defendants repeatedly and improperly suggest Lead Plaintiffs have the burden of justifying their chosen forum (*see* Mem. at 2, 4-5, 9-10, 12-14), the actual burden – the ***heavy*** burden – is on Defendants to establish the propriety of transfer.

4874-9895-4042.v1

unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine*, 599 F.3d at 112; *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07, 112 (2d Cir. 2006) (same). Courts also evaluate a forum's familiarity with the governing law and "'trial efficiency and the interest of justice, based on the totality of the circumstances.'" *Saccoccio v. Relin, Goldstein & Crane, LLP*, 2007 WL 1334970, at \*1 (S.D.N.Y. May 7, 2007). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

A factor-by-factor analysis demonstrates that Defendants fail to meet their heavy burden of justifying a transfer by clear and convincing evidence.

### B.    Defendants Have Not Satisfied Their Heavy Burden of Establishing the Propriety of the Requested Transfer

### 1.    Lead Plaintiffs' Choice of Forum Weighs Against Transfer

It is well established that a plaintiff's choice of venue, when proper under 15 U.S.C. §1391(b) (as here), is to be afforded great deference, as this Court has recently recognized. *See Milton*, 2022 WL 3156180, at \*7 ("courts must give substantial deference to the plaintiff's choice of venue"); *see also Gulf Oil*, 330 U.S. at 508 ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). Indeed, because the Court is being asked to exercise its discretion "at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded ***substantial weight*** to the first factor, plaintiff's choice of forum, for that very choice reflects one side's assessment of the balance of relevant factors, and since the law permits the suit to be brought where plaintiff has chosen to bring it, that choice should not be lightly overridden." *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002); *see also Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*, 818 F.

4874-9895-4042.v1

Supp. 2d 770, 773 (S.D.N.Y. 2011) ("[t]he Court gives substantial weight to [the plaintiff]'s choice of forum").

Defendants argue that Lead Plaintiffs' choice of forum carries "little weight" because Lead Plaintiffs "represent a nationwide class of 'geographically dispersed' shareholders" and Lead Plaintiffs "are not New York residents." Mem. at 13. But it is Lead Plaintiffs' fiduciary obligation to the proposed class – regardless of their own residency and the nationwide distribution of the class – to determine the best, most advantageous forum for the litigation, weighing matters such as strategy and convenience, and it is unclear why the resulting choice of forum should *not* be respected – absent a clear and convincing showing by Defendants to the contrary. *See Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*, 814 F.3d 652, 659 (2d Cir. 2016) ("lead plaintiffs and lead counsel are also bound by a fiduciary duty to the class").

Even if, however, Defendants are correct that less deference is given to Lead Plaintiffs' choice of forum when they seek to represent a nationwide class, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002); *see also In re Geopharma, Inc.*, 2005 WL 1123883, at *1 (S.D.N.Y. May 11, 2005) (same). As Judge Rakoff observed in *Albert Fadem Tr.*: "While, to be sure, the force of [plaintiffs'] choice [to sue in the S.D.N.Y.] may be diminished by the fact that plaintiffs here seek to represent a nationwide class of shareholders, . . . there is no reason to believe that such a class would have preferred that the suit be brought in North Carolina, that is, in the Fourth Circuit, rather than in New York, that is, in the Second Circuit . . . ." 214 F. Supp. 2d at 344.

Here, in fact, there is every reason to believe – given the S.D.N.Y.'s "well known . . . expertise in securities law, and [its ability] to move this case forward promptly and expeditiously,"

- 7 -

*id.* – the proposed class would prefer this case to be brought in the S.D.N.Y., rather than the N.D. Tex.

Moreover, courts in this District have held that Defendants' proposed alternative – effectively requiring securities cases to be brought only in the defendants' home district – is at odds with the securities laws. *See Albert Fadem Tr.*, 214 F. Supp. 2d at 344 (giving plaintiffs' choice of forum weight as plaintiffs "brought suit in the [S.D.N.Y.], indicating by that very act that this District is convenient"); *see also Geopharma*, 2005 WL 1123883, at *1-*2 (rejecting the premise that securities cases must be brought in defendants' home district because it is "at odds with the actual text of section 27"); *see also GPA Inc. v. Liggett Grp., Inc.*, 1994 WL 537017, at *3 (S.D.N.Y. Oct. 4, 1994) (the "fact that [defendant's] headquarters are in [the transferee district] and that [defendant] maintains its documents there" is "not persuasive"); *Milton*, 2022 WL 3156180, at *1 (denying transfer to corporate defendant's home district).

In sum, this factor heavily weighs against transfer.

> **2.      Because Defendants Have Meaningful Contacts with New York, and Many of the Other Operative Facts Took Place Outside of Texas, the Locus-of-Operative-Fact Factor Is at Best Neutral**

Defendants try to re-frame this case as a "'garden-variety federal securities fraud class action'" that has "'no particular connection'" to this District. Mem. at 1; *see also id.* at 10. But not only do Defendants and this lawsuit have material, legally meaningful contacts with New York, but many of the other operative facts took place ***outside*** of Texas, rendering this District an equally plausible and convenient forum in which to litigate.

First, Energy Transfer ***chose*** to do business in New York through its general partner and the subsidiary at the heart of the April 2017 Environmental Disaster, both of which were registered to do business here.   ¶35.   Second, Defendants disseminated their misrepresentations nationwide,

including in New York, a fact this Court deemed to be relevant in *Milton*: "The place of alleged wrongdoing, principally Defendant's misrepresentations, is not limited to the district where he made those statements due to the nationwide public dissemination of information which forms the basis of this suit." 2022 WL 3156180, at *9. And third, Energy Transfer units trade on a New York-based exchange – the NYSE (¶31) – which the Court deemed to be a "critical event[]" in its "Locus of Operative Facts" transfer analysis in *Milton*: "***critical events took place in this District, including . . . trading of Nikola stock on NASDAQ, also based in New York***." *Milton*, 2022 WL 3156180, at *9.

Moreover, as discussed below, potentially important non-party witnesses – securities analysts covering Energy Transfer who will testify regarding how investors viewed Defendants' misrepresentations – are located in New York (¶31) and can be compelled to testify here, but not in Texas. *See, e.g.*, *United States v. Ferguson*, 676 F.3d 260, 274 n.10 (2d Cir. 2011) ("The government's other materiality evidence was substantial: Two stock analysts . . . testified about the importance of loss reserve information to investors and analysts."). Thus, Defendants' claim that "none 'of the operative facts arose in the [S.D.N.Y.]'" (Mem. at 8) is simply incorrect.[5]

For their part, Defendants argue principally that because the false and misleading statements were made at their headquarters in Texas, the entire locus of operative facts occurred there. *Id.* at 7, 10-11. But even if it were true that every alleged misstatement originated in Texas – a contention contradicted by the Complaint and not supported by Defendants' moving papers – that is hardly dispositive for the very reason recognized by this Court in *Milton* – that "[t]he place of alleged

---

[5]    In addition, by arguing that the New York contacts Lead Plaintiffs cite "are woefully inadequate to shift the locus of operative facts" (*id.* at 10), Defendants are attempting, once again, to shift the burden on this Motion to Lead Plaintiffs. As noted above, it is Defendants' burden to justify transfer, not Lead Plaintiffs' burden to justify their indisputably proper choice of forum.

- 9 -

wrongdoing, principally Defendant's misrepresentations, is not limited to the district where he made those statements due to the nationwide public dissemination of information which forms the basis of this suit." 2022 WL 3156180, at *9.  Moreover, while some of the misleading statements occurred on earnings calls, which may have taken place in Texas, others occurred elsewhere, such as those at the 2017 MLPA conference in Orlando, Florida.  ¶82.  Thus, Defendants' citation to *Steck* (Mem. at 10), which involved a single misstatement that was made and disseminated in one location, is unpersuasive.  *See Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at *1, *7 (S.D.N.Y. June 17, 2015).[6]

Furthermore, while some of the case-specific operative facts occurred in Texas, many others occurred outside the state.  For example, the April 2017 Environmental Disaster occurred outside Texas; the Rover Project was constructed in four different states, none of which was Texas; and the FERC, which is located in Washington, D.C., actively investigated the April 2017 Environmental Disaster for over two years.  *See, e.g.*, ¶¶3, 7.  In addition, state regulatory agencies **other** than Texas's cited Energy Transfer for environmental violations that both increased the costs of and delayed the Rover Project – the central focus of Lead Plaintiffs' allegations.  ¶3.  *See Albert Fadem Tr.*, 214 F. Supp. 2d at 344 (finding defendants had not "made a meaningful showing" that the transferee forum "would be a more convenient forum than New York" due to sources of evidence being "located in such diverse places").

---

[6]   *Erickson v. Corinthian Colls., Inc.*, 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) is also distinguishable, as the court there granted transfer only after observing that the plaintiff's choice of forum "appear[ed] to be tactical" and followed dismissal from another district.  *Id.* at *3.  And Defendants' reliance on *City of Birmingham Fireman's & Policemen's Suppl. Pension Sys. v. Pluralsight, Inc.*, 2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019) (*see* Mem. at 8-9) is inapposite, as plaintiffs there conceded that the location of all relevant documents was the defendant's corporate headquarters.  *Pluralsight*, 2019 WL 12496341, at *1.

4874-9895-4042.v1

In short, with so many of the operative facts occurring outside of Texas, including in this District, the locus-of-operative-fact factor does not support a transfer at all, much less "strongly" support a transfer, as Defendants contend.  Mem. at 11.

### 3.    Defendants Concede that the Proposed Forum's Familiarity with Governing Law Is "Neutral"

Citing the general rule that all federal courts are "'presumed equally capable of applying federal law'" (Mem. at 13), Defendants concede that the proposed transferee court's familiarity with the governing law is "neutral" on the question of transfer (*id.* at 12).  Thus, Defendants cannot rely on this factor to help carry their heavy burden of justifying the requested transfer.[7]

### 4.    Defendants Concede that the Relative Means of the Parties Is "Neutral"

Defendants do not even attempt to show the relative means of the parties favor transfer, and in fact concede "this factor is neutral."  Mem. at 12.  Instead, Defendants cite *Scherillo v. Dun & Broadstreet, Inc.*, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010), to suggest that motions to transfer should be granted unless plaintiffs are able to demonstrate a substantial hardship caused by the transfer.  Mem. at 12.  This, however, is just another transparent effort to shift their own heavy burden to Lead Plaintiffs.  *See, e.g.*, *N.Y. Marine*, 599 F.3d at 113-14 (placing heavy "burden" on movant to prove by "'clear and convincing'" evidence that transfer is warranted).

Because Defendants concede the neutrality of this factor, it cannot support their Motion.

---

[7]    Although this factor is neutral for purposes of the Court's transfer analysis, that does not mean Lead Plaintiffs are indifferent as among the available venues.  As their decision to litigate in this District reflects, Lead Plaintiffs prefer this forum to the N.D. Tex.

**5.       Defendants Concede that the Location of Documents Is "Neutral When Considering . . . the Electronic Submission of Documents"**

Defendants suggest that because Energy Transfer is headquartered in Dallas, Texas, and the Individual Defendants either work or reside in Dallas, "[t]he location of the [relevant] documents also favors transfer." Mem. at 11. This argument fails for three reasons, the last of which Defendants concede.

First, Defendants have failed to specify the nature and volume of the documents to be produced that would make document production easier in the N.D. Tex., or to identify any problems with sharing or transporting those documents. This failure weighs against transfer. *See, e.g.*, *Colour & Design v. U.S. Vinyl Mfg. Corp.*, 2005 WL 1337864, at \*4 (S.D.N.Y. June 3, 2005) ("Accordingly, given defendants' failure to specify the nature and volume of the documents they plan to use in support of their case, or the difficulty in transporting such documents, ***this factor weights [sic] against transfer***.").

Second, Defendants fail to acknowledge that multiple non-party witnesses who are likely to possess documents relevant to this litigation, including securities analysts, the FERC, and the Ohio EPA, are either located in this District or outside of Texas, neutralizing the relevance of any documents located in Texas.

And third, even if Defendants could establish that the vast majority of relevant documents reside in Texas, courts in this District do "not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012). Even the case law on which Defendants rely recognizes as much. *See In re Vivint Solar, Inc. Sec. Litig.*, 2020 WL 7770992, at \*3 (E.D.N.Y. Dec. 30, 2020) (noting that the "ease of

- 12 -

4874-9895-4042.v1

transmitting documents reduces [the] significance" of this factor). As Defendants themselves concede, "[a]t worst, this factor is neutral when considering . . . the electronic submission of documents and should not affect the transfer analysis." Mem. at 11.

### 6.    The Convenience of the Parties Does Not Weigh in Favor of Transfer

Defendants have not shown that the convenience of the ***parties*** weighs "strongly in favor of a transfer," as they claim. Mem. at 7. They have shown only that it is their own preferred forum, and perhaps more convenient for ***them***. But that is not the relevant question.

Although it is true that Defendants' headquarters is in the transferee district, courts in this District have held that corporate defendants have no basis for expecting every lawsuit to be filed in their home district. *See Geopharma*, 2005 WL 1123883, at *1-*2 (rejecting defendants' argument that securities suits presumptively must be filed in the home district of the defendant and calling such a position at "odds with the actual text of section 27"); *see also Milton*, 2022 WL 3156180, at *9. Defendants complain that a trial in the S.D.N.Y. may lead to "'some disruption to [Energy Transfer's] day-to-day operations'" because Energy Transfer is headquartered in Dallas. Mem. at 7. But trials are necessarily disruptive, regardless of the forum, so this grievance should be afforded little weight.

Defendants also argue that because Lead Plaintiffs are from New Mexico, and not the S.D.N.Y. or the N.D. Tex., and represent a nationwide class, their "'convenience is not a factor.'" *Id.* This District has rejected the premise that plaintiffs must reside in the forum in which the action is brought. *See GPA Inc.*, 1994 WL 537017, at *3 ("On the contrary, a plaintiff's choice of forum is entitled to significant weight, regardless of plaintiff's residence."). Moreover, by pursuing this case in this Court, Lead Plaintiffs have indicated that the S.D.N.Y. is convenient for them. *See Albert Fadem Tr.*, 214 F. Supp. 2d at 344 (plaintiffs "brought suit in the [S.D.N.Y.], indicating by that very

- 13 -

act that this District is convenient"). That is true regardless of Defendants' unsupported assumption that this Court would be an inconvenient forum for yet-to-be-identified class members. *See id.* ("there is no reason . . . that such a class would have preferred that the suit be brought in [the N.D. Tex.], rather than in New York").

Defendants' reliance on *Dell* is inapposite because "the bulk of the alleged wrongdoing [there] occurred" in the transferee district. *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *7 (S.D.N.Y. Apr. 30, 2015). Here, the wrongdoing occurred all over the country, including in this District, in Ohio, Florida, and Texas. With so many potential forums for this litigation, Lead Plaintiffs' choice should not be disturbed.

### 7.    The Convenience of the Witnesses Does Not Weigh in Favor of Transfer

Defendants argue that the N.D. Tex. is more convenient for the witnesses than this District because the Individual Defendants and other unidentified witnesses are "overwhelmingly located in or near" the N.D. Tex. Mem. at 6. This argument fails for several reasons.

First, Defendants' Motion is procedurally flawed. When relying on the convenience of the witnesses as a primary factor in favor of transfer, the movant must supply an affidavit identifying witnesses and the probable subject matter of their testimony to support that motion. *Lesser ex. rel. Lesser v. Camp Wildwood*, 2002 WL 1792039, at *3 (S.D.N.Y. Aug. 2, 2002) ("Defendants relying on this factor must 'support the application with an affidavit containing detailed factual statements . . . .'"); *see also Zangiacomi v. Saunders*, 714 F. Supp. 658, 661 (S.D.N.Y. 1989) (denying transfer where "defendant has failed to state even generally what their testimony will cover") (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)); *GPA Inc.*, 1994 WL 537017, at *2 (denying transfer where the "Court . . . received no affidavits with respect to the identity or number of [defendant's] anticipated trial witnesses or a general statement concerning their testimony");

- 14 -

4874-9895-4042.v1

*Prentice-Hall Corp. Sys., Inc. v. Ins. Co. of N.A.*, 81 F.R.D. 477, 480 (S.D.N.Y. 1979) (noting it "cannot consider [witnesses] potential testimony as a reason to transfer the action" in light of an insufficient declaration). The affidavit must contain detailed statements identifying and describing potential principal witnesses the movants expect to be called, and general statements regarding the substance of their testimony. *Lesser*, 2002 WL 1792039, at \*3; *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (same). Without such an affidavit, a court is unable to give this factor "much credit or weight." *Falconwood Fin. Corp. v. Griffin*, 838 F. Supp. 836, 841 (S.D.N.Y. 1993).

The Defendants' Declaration of Brent Ratliff, submitted in support of the Motion (ECF 49) (the "Declaration"), is threadbare at best and lacks a description of the witnesses' expected testimony. All the Declaration includes is a list of some – but not all – of the Individual Defendants, their job titles, and the cities in which they live and work. *Id.* at 1-2. The Declaration fails to address defendant Ramsey entirely. Lead Plaintiffs may prevail on this basis alone, as courts in this District have held. *See GPA Inc.*, 1994 WL 537017, at \*2 (rejecting arguments for motion to transfer on the basis of inconvenience to the witnesses where the affidavit was insufficient); *Shulof v. Westinghouse Elec. Corp.*, 402 F. Supp. 1262, 1263-64 (S.D.N.Y. 1975) ("such a deficiency" can be "fatal" to the transfer motion).

Second, even if the Court were to consider Defendants' insufficiently supported arguments, Defendants incorrectly assume that the only relevant witnesses will be in Texas, arguing "'[i]t is well known that trials in securities class actions focus almost entirely on the defendants' conduct'" and "'defendants' state of mind'" (Mem. at 6), and that the convenience of Lead Plaintiffs' witnesses should be ignored (*id.* at 8). But these arguments overlook the central focus of Lead Plaintiffs' allegations, more thoroughly explained in §III.B.2, *supra*, which implicate potential witnesses all

- 15 -

4874-9895-4042.v1

over the United States, not just in New Mexico or Texas.  These potential witnesses include securities analysts in this District; officers, committee members, and investigators working for the FERC in Washington, D.C.; and employees and investigators of the Ohio EPA.  These witnesses may have relevant testimony concerning Defendants' knowledge of the FERC's investigation, the delays on the Rover Project, and even the impact of Defendants' alleged misrepresentations and omissions.  In short, Lead Plaintiffs' allegations may require substantial discovery outside of Texas, undercutting Defendants' argument that the "vast majority" of relevant witnesses are in Texas. Mem. at 1.  Thus, *In re ChannelAdvisors Corp. Sec. Litig.*, which found that the witnesses "all reside in and around the company's headquarters," is distinguishable.  2015 WL 4064625, at *2 (S.D.N.Y. July 2, 2015).[8]

Third, the generic categories of witnesses that Defendants did identify (Mem. at 6) will suffer little inconvenience.  As courts in this District have noted, "travel has become cheaper and easier" and the burden of travel on corporate and executive defendants is of little consideration – particularly to in the age of Zoom videoconferencing.  *Tomita*, 818 F. Supp. 2d at 772; *Geopharma*, 2005 WL 1123883, at *2 (rejecting defendants' argument that securities suits must always be heard in the home district of the defendant in the interest of convenience of the witnesses).  Moreover, non-party depositions will proceed either within 100 miles of the witness's domicile or via remote means, further undercutting Defendants' arguments.

In short, Defendants have failed to carry their burden in demonstrating that the relevant witnesses will be inconvenienced by litigation in this District.  This unsupported factor, therefore,

---

[8]    Because the parties have not exchanged Rule 26 initial disclosures at this early juncture, the location of all potentially relevant witnesses remains to be disclosed.

does not weigh in favor of transfer, much less "strongly" support a transfer, as Defendants contend. Mem. at 7.

8.    **Defendants Concession that the Court's Ability to Compel the Attendance of Unwilling Witnesses Is "Neutral" Obscures the Reality that This Factor Affirmatively Supports Keeping the Lawsuit in This District**

Defendants concede that they are "not aware of any potential third-party witnesses 'likely to present attendance challenges,'" and that the availability of process to compel attendance is therefore "neutral." Mem. at 11. For this factor to weigh in favor of transfer, the movant must establish that a non-party witness would be unwilling to testify in this Court. *See Milton*, 2022 WL 3156180, at *9 (noting moving party's failure to identify specific witnesses unwilling to testify, and "declin[ing] to give weight to [defendant's] mere speculation").

But not only does this factor not weigh in favor of transfer; it provides an additional reason for ***keeping*** the lawsuit in this District. As alleged, securities analysts following Energy Transfer operate in this District (¶31), and may be called as lay witnesses regarding how investors interpreted Defendants' representations. *See, e.g.*, *United States v. Ferguson*, 2007 WL 4556625, at *3 (D. Conn. Dec. 20, 2007) ("the Court finds that the securities analysts' anticipated testimony . . . constitutes permissible lay opinion under Rule 701 because it satisfies all three of the Rule's requirements"); *see also Ferguson*, 676 F.3d at 274 n.10. These New York witnesses could not be compelled to testify in the N.D. Tex.

9.    **The Efficiency and Interests of Justice Factors Are Neutral**

Although Defendants cite "trial efficiency" and the "interests of justice" as justifications for a transfer, they merely rehash the arguments already rebutted above, with nothing new in support. Mem. at 13-14. And they merely cite to *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130 (S.D.N.Y. May 21, 2010), a case in which, unlike here, "all of the key witnesses"

resided, and all of the actionable statements were made, in the transferee district. *Id.* at *4. Thus, these factors, like the others discussed above, are at best neutral, and do not support a transfer.

## IV.   CONCLUSION

Because, for the reasons set forth above, Defendants have not carried their heavy burden of justifying a transfer by clear and convincing evidence, Lead Plaintiffs' choice of forum should not be disturbed.[9]  Lead Plaintiffs therefore respectfully request that the Court deny Defendants' Motion.

DATED:  October 21, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
DAVID A. ROSENFELD
MARK T. MILLKEY

*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mmillkey@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN (admitted *pro hac vice*)
HEATHER G. GEIGER (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
hgeiger@rgrdlaw.com

---

[9]   *See, e.g.*, *N.Y. Marine*, 599 F.3d at 113-14 (2d Cir. 2010); *Norex Petroleum*, 416 F.3d at 154 ("'the plaintiff's choice of forum should rarely be disturbed'").

4874-9895-4042.v1

Lead Counsel for Lead Plaintiff

OFFICE OF THE NEW MEXICO
  ATTORNEY GENERAL
HECTOR BALDERAS, Attorney General,
BRIAN McMATH Assistant Attorney General
Post Office Drawer 1508
Santa Fe, NM  87504-1508
Telephone: 505/717-3500
bmcmath@nmag.gov

Additional Counsel for Lead Plaintiff

- 19 -

4874-9895-4042.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 21, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  rrothman@rgrdlaw.com

4874-9895-4042.v1

# Mailing Information for a Case 1:22-cv-04614-AKH Vega v. Energy Transfer LP et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam M. Apton**
  aapton@zlk.com,jtash@zlk.com,hakulp@zlk.com

- **Christopher Emmanuel Duffy**
  cduffy@velaw.com,NYManagingClerk@velaw.com,christopher-duffy-2329@ecf.pacerpro.com

- **Andrea Farah**
  afarah@lowey.com,jpedersen@lowey.com,8091312420@filings.docketbird.com,rgupta@lowey.com,agreco@lowey.com,ylu@lowey.com

- **Heather Geiger**
  hgeiger@rgrdlaw.com,HSchlesier@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Meredith Lyons**
  mlyons@velaw.com

- **Mark Tamerlane Millkey**
  mmillkey@rgrdlaw.com,e_file_ny@rgrdlaw.com,MMillkey@ecf.courtdrive.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com,RRothman@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com,DebraW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)