**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE ENERGY TRANSFER SECURITIES LITIGATION | Civil Action No. 1:22-cv-04614-AKH |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

     A.   The § 1404 Factors Overwhelmingly Favor Transfer................................3

          1.   Convenience of the Witnesses ................................................... 3

          2.   Locus of Operative Facts .......................................................... 7

          3.   Plaintiffs' Choice of Forum ..................................................... 10

          4.   Convenience of the Parties........................................................ 12

          5.   Location of the Documents........................................................ 13

          6.   Availability of Process............................................................... 14

          7.   Relative Means of the Parties ................................................... 14

          8.   Forum's Familiarity with Governing Law................................. 14

          9.   Interests of Justice and Efficiency ........................................... 15

     B.   *Milton* Does Not Change the Analysis....................................................16

     C.   Plaintiffs' Reference to *Allegheny County* Also Confirms That Transfer is Appropriate. ...........................................................................................17

III. CONCLUSION................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Microfield Graphics, Inc.*,
    2000 WL 1716340 (S.D.N.Y. Nov. 16, 2000) ............................................................. 4

*Albert Fadem Tr. v. Duke Energy Corp.*,
    214 F. Supp. 2d 341 (S.D.N.Y. 2002) ...................................................................... 11

*Allegheny County Emps. Ret. Sys. v. Energy Transfer LP*,
    2020 WL 1888950 (E.D. Pa. Apr. 16, 2020) ...................................................... 17, 18

*Buckingham Props., LLC v. Atl. Cas. Ins. Co.*,
    2017 WL 3912996 (E.D.N.Y. Sept. 6, 2017) ............................................................. 9

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*,
    2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019) ................................................... passim

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
    2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ................................................... passim

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
    2010 WL 2035130 (S.D.N.Y. May 21, 2010) ............................................... 1, 10, 15

*Colour & Deign v. U.S. Vinyl Mfg. Corp.*,
    2005 WL 1337864 (S.D.N.Y. June 3, 2005) ............................................................ 13

*Command Arms Accessories, LLC v. ME Tech. Inc.*,
    2019 WL 5682670 (S.D.N.Y. Oct. 31, 2019) ............................................................. 6

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
    260 F. Supp. 3d 401 (S.D.N.Y 2017) ........................................................................ 3

*Eres N.V. v. Citgo Asphalt Ref. Co.*,
    605 F. Supp. 2d 473 (S.D.N.Y. 2009) ....................................................................... 6

*Erickson v. Corinthian Colleges, Inc.*,
    2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ................................................. 5, 8, 9, 10

*Garity v. Tetraphase Pharms. Inc.*,
    2019 WL 2314691 (S.D.N.Y. May 30, 2019) ..................................................... 10, 11

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004) ....................................................................... 6

*Houlihan Lokey Howard & Zukin Cap. Inc. v. The Protective Grp., Inc.*,
    2005 WL 3367044 (S.D.N.Y. Dec. 12, 2015) ......................................................... 6, 7

*In re CenturyLink, Inc. Sec. Litig.*,
    2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) ........................................................... 5

*In re ChannelAdvisor Corp. Sec. Litig.*,
    2015 WL 4064625 (S.D.N.Y. July 2, 2015) ...................................................... passim

*In re Glob. Cash Access Hldgs., Inc. Sec. Litig.*,
   2008 WL 4344631 (S.D.N.Y. Sept. 18, 2008)..................................................................... 4

*In re McDermott Intern., Inc. Sec. Litig.*,
   2009 WL 1010039 (S.D.N.Y. Apr. 13, 2009) ...................................................................... 5

*In re Nematron Corp. Sec. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998) .................................................................................. 14

*In re Vivant Solar, Inc. Sec. Litig.*,
   2020 WL 7770992 (E.D.N.Y. Dec. 30, 2020) ..................................................................... 14

*Lesser ex. rel. Lesser v. Camp Wildwood*,
   2002 WL 1792039 (S.D.N.Y. Aug. 2, 2002)........................................................................ 3

*MBCP Peerlogic LLC v. Critical Path, Inc.*,
   2002 WL 31729626 (S.D.N.Y. Dec. 5, 2002) ...................................................................... 5

*Neske v. New York City Dep't of Educ.*,
   2021 WL 5712075 (E.D.N.Y. Dec. 2, 2021) ...................................................................... 11

*Samson Lift Techs. v. Jerr-Dan Corp.*,
   2009 WL 2432675 (S.D.N.Y. Aug. 7, 2009)...................................................................... 10

*SEC v. Milton*,
   2022 WL 3156180 (S.D.N.Y. Aug. 8, 2022)....................................................... 9, 14, 16, 17

*Sheree Cosmetics, LLC v. Kylie Cosmetics, LLC.*,
   2019 WL 3252752 (S.D.N.Y. July 19, 2019) ................................................................ 10, 13

*Steck v. Santander Consumer USA Hldgs. Inc.*,
   2015 WL 3767445 (S.D.N.Y. June 17, 2015) .................................................................. 4, 5

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*,
   324 F. Supp. 3d 366 (W.D.N.Y. 2018)........................................................................... 9, 15

**Statutes**

28 U.S.C. § 1404............................................................................................................... 2, 16

28 U.S.C. § 1404(a) .......................................................................................................... 3, 13

28 U.S.C. § 1658(b) ............................................................................................................... 7

## I.    INTRODUCTION

This is a putative securities class action brought by two investment funds located in New Mexico against a company headquartered in Dallas, Texas and concerning statements made by individuals based in Dallas.  Given these facts, it is not surprising that Plaintiffs' Response[1] cannot identify any meaningful connection between this District and the events, parties, or potential witnesses in this action.  At most, Plaintiffs speculate that certain "potential" third-party securities analyst witnesses are present in New York, that non-party Energy Transfer entities are registered to do business here, that Energy Transfer's common units trade on the New York Stock Exchange, and that Plaintiffs chose to file suit here.  Such facts are not sufficient to deny transfer of a securities class action to the district in which the alleged statements at issue were made and in which the defendant-company is headquartered.  Indeed, if Plaintiffs' arguments were sufficient, nearly all securities class actions would be non-transferrable from this District.  But as courts in this District have repeatedly made clear, this is not the law:

> Although Plaintiffs correctly point out that [defendant's] stock is traded on the [NYSE], which is located in the SDNY, and many of the analysts who follow [defendant's] stock are located in New York City, ***these contacts don't do it***.  If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street.

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *4 (S.D.N.Y. May 21, 2010); *see also City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*, 2019 WL 12496341, at *2 (S.D.N.Y. Oct. 24, 2019) (Hellerstein, J.) ("[A] listing on the NASDAQ and the involvement of third-party financial entities (neither of whom are mentioned in the complaint) in the offering, do not change the locus of the dispute.").  Indeed,

---

[1] Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue to the Northern District of Texas, ECF No. 57 ("Response").

courts "regularly" and "routinely" transfer putative securities class actions away from this District in circumstances similar to those here. *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *7 (S.D.N.Y. Apr. 30, 2015); *In re ChannelAdvisor Corp. Sec. Litig.*, 2015 WL 4064625, at *2, *4 (S.D.N.Y. July 2, 2015).

Here, the § 1404 factors clearly point to transfer, as the locus of operative fact is centered in Dallas, where all the challenged statements were made, and where Defendants' witnesses and documents—undisputedly the principle sources of fact here—are located. The Court should thus grant Defendants' Motion and transfer this action to the Northern District of Texas, Dallas Division.

## II.   ARGUMENT

As explained in Defendants' Opening Brief,[2] transfer is proper because this action could have been brought in the Northern District of Texas and because the § 1404 factors weigh heavily in favor of transfer to that District. Plaintiffs concede that this action could have been brought in the Northern District of Texas, but argue that the Court should retain this case solely out of deference to Plaintiffs' choice of forum, even where no other factor supports the retention of this case in this District. But Plaintiffs are state agencies of the State of New Mexico, *see* ECF 24-4 ¶ 2, that seek to represent a geographically dispersed class of investors, Compl. ¶ 168. Thus, New York "is not [Plaintiffs'] home turf" and, accordingly—as this Court recognized in transferring a similar federal putative securities class action—their "choice of forum is entitled to little deference." *Pluralsight*, 2019 WL 12496341, at *2. Moreover, as discussed below, the remaining factors (including the key factors regarding convenience and the locus of operative facts) weigh

---

[2] Memorandum of Law in Support of Defendants' Motion to Transfer Venue to the Northern District of Texas, ECF No. 48 ("Opening Brief" or "Op. Br.").

strongly in favor of transfer.  As a result, the Motion should be granted and this action should be transferred to the Northern District of Texas.

> A.    **The § 1404 Factors Overwhelmingly Favor Transfer.**

> 1.    **Convenience of the Witnesses**

Although courts in this District identify the convenience of witnesses as "the ***single most important*** § 1404(a) factor," Plaintiffs do not highlight this factor in their brief.  *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 409 (S.D.N.Y 2017); Response at 14.  Plaintiffs cannot dispute that the key witnesses in this action will be Energy Transfer officers and employees who are located in the Northern District of Texas.  *See* Op. Br. at 5-6 (citing *Dell*, 2015 WL 12659925, at *5; Compl. ¶¶ 36-42; Ratliff Decl. (ECF No. 49) ¶¶ 3, 5-10).  And Plaintiffs do not specifically identify ***any other witness in this action***, much less one located in the Southern District of New York.  Thus, this factor weighs heavily in favor of transfer to the Northern District of Texas despite Plaintiffs' several unavailing attempts to render it neutral.

*First*, Plaintiffs argue that Defendants' have failed to provide "a description of the witnesses' expected testimony" in the declaration that Defendants submitted along with their Motion.  Response at 14-15.  But Plaintiffs' own cases only require identification of "potential principal witnesses" and "a general statement of the substance of their testimony."  *See, e.g.*, *Lesser ex. rel. Lesser v. Camp Wildwood*, 2002 WL 1792039, at *3 (S.D.N.Y. Aug. 2, 2002).  The Ratliff Declaration did just this by identifying the Individual Defendants, the location of their residences and places of work, and that they "have knowledge as to Energy Transfer's public statements and disclosures . . . ."  Ratliff Decl. ¶¶ 5-10.  Moreover, the identities of Defendants' witnesses and the subject of their testimony is no mystery to Plaintiffs.  The Complaint itself alleges that the Individual Defendants knowingly made false and misleading statements or had control over the contents of the challenged statements contained in Energy Transfer's SEC filings—thus, Plaintiffs

3

concede that the Individual Defendants are in a position to testify about the challenged public statements.  Compl. ¶ 42 ("The Individual Defendants . . . made and/or controlled the contents of the Partnership's public statements" and "knew, or were reckless in not knowing, that the adverse facts described herein were misrepresented, not disclosed to, and/or were concealed from investors.").  It is nonsensical for Plaintiffs to now argue that the subjects of the Individual Defendants' testimony is unknown—particularly when specific statements by certain Individual Defendants are alleged to be false.  *E.g.*, Compl. ¶¶ 99, 101, 114-16, 123-24, 140, 145-46 (Defendant Long alleged to have made misstatements on specific topics); ¶¶ 100, 102, 105 (Defendant Ramsey alleged to have made misstatements on specific topics); *see also Steck v. Santander Consumer USA Hldgs. Inc.*, 2015 WL 3767445, at *4 (S.D.N.Y. June 17, 2015) (holding that convenience of witnesses favored transfer where "the allegations in the complaint support Defendants' assertion that the Northern District of Texas is a more convenient forum for a substantial number of the most significant witnesses").

Indeed, it is well known that, in securities fraud actions, "the key witnesses are frequently officers and employees of the issuer who participated in drafting and distributing [the] statements." *In re Glob. Cash Access Hldgs., Inc. Sec. Litig.*, 2008 WL 4344631, at *4 (S.D.N.Y. Sept. 18, 2008).  And it is also "well known that trials in securities class action focus almost entirely on the defendants' conduct," namely the "accuracy of [] statements and defendants' state of mind." *ChannelAdvisor*, 2015 WL 4064625, at *2 (S.D.N.Y. July 2, 2015); *Adair v. Microfield Graphics, Inc.*, 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000).  Accordingly, it cannot be seriously disputed in a securities class action that "the vast majority of material witnesses are in [the place of the defendant's corporate headquarters] and would therefore find it more convenient to testify [there] than New York." *MBCP Peerlogic LLC v. Critical Path, Inc.*, 2002 WL 31729626, at *4

4

(S.D.N.Y. Dec. 5, 2002) (finding this factor favored transfer "[e]ven though defendants ha[d] not provided a list that identifies potential witnesses expected to be called to testify").

*Next*, Plaintiffs vaguely allude to the existence of "potential witnesses includ[ing] securities analysts in this District . . . ." Response at 16. But Plaintiffs do not identify these purported analysts, explain the subject of their expected testimony, or substantiate their actual location other than to assume that they "conduct their business in this District." Response at 2, 16. And, in any event, courts in this District have repeatedly rejected this same argument when considering transfer motions. *E.g.*, *Steck*, 2015 WL 3767445, at *5 ("[Plaintiff's] assertion that financial analysts who covered Santander probably work in New York deserves negligible weight."); *Dell*, 2015 WL12659925, at *6 (granting transfer over argument that Dell "traded on the NASDAQ and certain analysts who followed Dell were based in New York"); *In re CenturyLink, Inc. Sec. Litig.*, 2014 WL 1089116, at *2 (S.D.N.Y. Mar. 18, 2014) (holding that existence of several non-party, New York-based analysts who attended conference calls does not defeat transfer); *Pluralsight*, 2019 WL 12496341, at *2 ("[I]nvolvement of third-party financial entities . . . do[es] not change the locus of the dispute" or defeat transfer); *Erickson v. Corinthian Colleges, Inc.*, 2013 WL 5493162, at *4 (S.D.N.Y. Oct. 1, 2013) ("Securities analysts lack personal knowledge of the circumstances regarding the alleged false statements, and therefore do not provide a significant tether to the Southern District of New York."); *In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 1010039, at *4-*5 (S.D.N.Y. Apr. 13, 2009) (noting convenience of witnesses favors transfer after rejecting plaintiff's argument that "securities analysts who covered [defendant's] stock during the Class Period" could give "testimony about defendants' statements and how they affected [their] analysis and evaluation of [defendant's stock]" unless the witnesses could "qualify as experts" and "[e]xpert witnesses are generally excluded from the analysis of the convenience of the witnesses").

In fact, far from supporting the Response, Plaintiffs' reliance on unnamed securities analysts is telling given that Plaintiffs cannot identify a single witness based in this District who has first-hand knowledge of the operative facts. This dooms Plaintiffs' attempt to balance this factor as "neutral." After all, the inquiry is not just about tallying up the number of witnesses in each district; when analyzing this factor, "courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Houlihan Lokey Howard & Zukin Cap. Inc. v. Protective Grp., Inc.*, 2005 WL 3367044, at *4 (S.D.N.Y. Dec. 12, 2015). Here, where it is beyond serious dispute that the key witnesses are overwhelmingly located in the Northern District of Texas, this factor weighs heavily in favor of transfer.

*Third*, Plaintiffs vaguely point to the existence of "officers, committee members, and investigators for the FERC in Washington D.C.; and employees and investigators of the Ohio EPA." Response at 15-16. But, again, Plaintiffs do not list the identities of these individuals, explain the subject of their expected testimony, or provide any affidavit or declaration supporting their existence. In any event, these individuals' locations do not deserve weight in the transfer calculus because **they are not located in the Southern District of New York**. Plaintiffs ignore entirely Defendants' citation to *Herbert Ltd. Partnership v. Electronic Arts Inc.*, which notes that "[t]he convenience of witnesses who reside in neither the current nor the transferee forum is **irrelevant** when considering a motion to transfer." 325 F. Supp. 2d 282, 288 (S.D.N.Y. 2004) (emphasis added); *see also Command Arms Accessories, LLC v. ME Tech. Inc.*, 2019 WL 5682670, at *6-7 (S.D.N.Y. Oct. 31, 2019) (same); *Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009) ("The convenience of witnesses who reside in neither the current nor the transferee forum is not relevant when considering a motion to transfer venue."); *Stryker*, 2010 WL 2035130, at *3 (similar). Plaintiffs cannot contend that the scattered locations

of these unnamed witnesses should outweigh the fact that the most important witnesses in this action are clearly concentrated in Dallas. *Houlihan Lokey*, 2005 WL 3367044, at *4.

*Finally*, Plaintiffs argue that the "burden" on Defendants to travel to New York is minimal. Response at 16. But this argument has been rejected because "the inquiry is not whether the party witnesses could easily get to New York; the inquiry is which of the two forums is *more* convenient." *ChannelAdvisor*, 2015 WL 4064625, at *2. Here, that forum is the Northern District of Texas where the key witnesses work.

The critical convenience-of-witnesses factor weighs strongly in favor of transfer.

### 2. Locus of Operative Facts

The locus of operative facts is also centered in the Northern District of Texas, despite Plaintiffs' attempt to label this factor as merely neutral. As this Court has held, this factor "weighs heavily in favor of transfer" where "[w]ith the exception of a single statement made at a conference in New York City . . . every press release, SEC filing or other public statement challenged in the Complaint [was] issued from" Defendants' corporate headquarters in the transferee forum. *Pluralsight*, 2019 WL 12496341, at *1. The Court should reach the same result here as ***every challenged statement was issued from Energy Transfer's headquarters*** in Dallas. Ratliff Decl. ¶ 10; Response at 10 (conceding that Defendants' earnings calls were disseminated from Texas).

To be sure, Plaintiffs suggest that a few statements mentioned in the Complaint were also made at one conference in Florida. *See* Response at 10. But these statements are only mentioned in the Complaint by way of background; the Complaint does not allege that any statement made at the Florida conference was actionably misleading. *Compare* Compl. ¶¶ 82, 83 *with*, *e.g.*, *id*. ¶¶ 91, 92 ("The statements in ¶91 were materially false and misleading omitted facts necessary to make them not misleading when made . . . ."). Nor could Plaintiffs make such an allegation, as any statement made at that conference occurred more than five years before Plaintiffs filed this

action and, thus, is beyond the five-year statute of repose. *Compare* Compl. ¶ 82 (alleging that MLPA Investors Conference occurred from May 31, 2017 through June 1, 2017); ECF No. 1 (filed on June 3, 2022); 28 U.S.C. § 1658(b). And, even if such statements were at issue here, they would be of no relevance to the Motion, since the Florida conference did not take place in (or even near) New York.

Plaintiffs next assert that Energy Transfer common units trade on the NYSE and that "securities analysts covering Energy Transfer . . . are located in New York." Response at 9. But for purposes of resisting a motion to transfer, "these contacts don't do it." *Erickson*, 2013 WL 5493162, at *7; *see also* Op. Br. at 9 (collecting authorities). Plaintiffs also claim that Energy Transfer's general partner and its Rover subsidiary are "registered to do business" in New York. Response at 8. But Plaintiffs do not (and cannot) contend that any activities related to Rover's construction occurred in New York (they did not) or that Rover runs through this District (it does not). *See* Op. Br. at 10. Moreover, despite arguing that Energy Transfer "operates pipelines in New York" (Response at 3), the Response ignores that Energy Transfer's New York presence constitutes less than 0.4% of its total footprint and that no Energy Transfer pipeline located in New York is relevant to this lawsuit. *See* Op. Br. at 10.

Plaintiffs also contend that Defendants' alleged misrepresentations were "disseminated nationwide, including in New York." Response at 2; 9-10. But this does not shift the locus of operative facts to New York in any meaningful way. After all, Defendants alleged misrepresentations were disseminated throughout Texas just as they were in New York. But critically, they were only disseminated ***from*** Texas. Plaintiffs' reliance on *Milton* does not help them. *See* Response at 9-10. In that SEC enforcement action, the Court found the locus-of operative-fact factor neutral where "many alleged misstatements" were ***made*** in the Southern

8

District of New York.  *SEC v. Milton*, 2022 WL 3156180, at \*6, \*9 (S.D.N.Y. Aug. 8, 2022) ("[T]he complaint alleges that Defendant made false and misleading statements from within the [S.D.N.Y.], for example, in a televised appearance on *Fast Money*, which is taped on the floor of the New York Stock Exchange . . . .").  Moreover, *Milton* repeatedly stressed the existence of additional "material connections to" the Southern District of New York, including that the merger at the heart of that action was consummated there.  *Id*. at \*9.  Here, no alleged misstatement was made in the Southern District of New York; indeed, every alleged statement was made from the Northern District of Texas.  And Plaintiffs also cannot allege any other non-trivial connection to this District that might balance the locus of operative facts away from Texas.

Instead, Plaintiffs resort to pointing out that certain events occurred "outside of Texas"—although they cannot claim that any occurred in New York.  Response at 10-11.  But Plaintiffs did not bring this action in Ohio, where certain events underlying this action occurred.  And events ***in Ohio*** do not alter the analysis of whether litigating ***in New York or Texas*** is more convenient and in the interests of justice.  *See Buckingham Props., LLC v. Atl. Cas. Ins. Co.*, 2017 WL 3912996, at \*2 (E.D.N.Y. Sept. 6, 2017) ("Because the majority of the relevant facts to this litigation occurred in the Western District or out of state and none occurred in the Eastern District, the locus of operative facts weighs heavily in favor of transfer [to the Western District]."); *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 381 (W.D.N.Y. 2018) ("Whether or not there are multiple loci of operative facts is irrelevant, because it does not appear that New York bears any more than a tangential relation to the facts of this case.").  Indeed, if anything, Plaintiffs' citation to events in Ohio confirms that they cannot overcome the established precedent holding that the "locus of operative events in a securities action is where the alleged misrepresentations were made." *Erickson*, 2013 54993162, at \*6; *see also Stryker*, 2010 WL

2035130, at *3 (same); *Samson Lift Techs. v. Jerr-Dan Corp.*, 2009 WL 2432675, at *4 (S.D.N.Y. Aug. 7, 2009) ("The operative events relating to fraud and misrepresentation are deemed occur in the place where such statements are made.").

### 3.    Plaintiffs' Choice of Forum

Next, Plaintiffs seek to assign outsized importance to their choice of forum, arguing without supporting citation that their choice must be respected "absent a clear and convincing showing by Defendants to the contrary." Response at 6-7. But "courts afford little weight to a plaintiff's choice of forum in a securities class action." *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *2 (S.D.N.Y. May 30, 2019) (collecting cases). "This is particularly true where, as here, the plaintiff purports to represent a geographically dispersed class." *Id.* And a plaintiff's choice of forum is reduced still more where, as here, "Plaintiff does not reside in this district." *ChannelAdvisors*, 2015 WL 4064625, at *2 (a plaintiff's choice of forum is "greatly diminished" in such circumstances); *see also Pluralsight*, 2019 WL 12496341, at *2 (noting that plaintiff's choice of forum is "entitled to little deference" where, as here, New York is "not [plaintiff's] home turf"); *Sheree Cosmetics, LLC v. Kylie Cosmetics, LLC.*, 2019 WL 3252752, at *3 (S.D.N.Y. July 19, 2019) (A "plaintiff's choice [of forum] carries little weight if it is neither the plaintiff's home forum nor where the operative events occurred."). Finally, to the extent Plaintiffs' choice of forum had any remaining weight, it would be further reduced because "the operative facts lack a meaningful connection to the chosen forum." *Erickson*, 2013 WL 54993162, at *2-*3.

Plaintiffs attempt to avoid application of this well-established precedent by citing to non-class action cases and various dicta. But cases involving one or a few plaintiffs present different considerations than those involving a nationwide class. And Plaintiffs' one citation to a purported securities class action specifically notes that "the force of [a plaintiff's] choice may be diminished by the fact that [the plaintiff] seek[s] to represent a nationwide class of shareholders . . . ." *See*

10

*Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 344 (S.D.N.Y. 2002). Moreover, while the court in *Duke Energy* did deny a motion to transfer, the circumstances of that case were far different than those here. For example, in *Duke Energy* "many of the most important witnesses and sources of documentary evidence [we]re located in . . . New York[.]" 214 F. Supp. 2d at 344. "And, of course, the accounting firm defendant, Deloitte & Touche LLP, [wa]s headquartered in New York." *Id.* No such connections to New York exist in this case. Plaintiffs here (i) do not reside in this District, (ii) seek to represent a nationwide class, and (iii) cannot identify any operative facts with a meaningful connection to the chosen forum. Their choice of forum is thus entitled to little deference. *Garity*, 2019 WL 2314691, at *2 (pointing out that in the years since *Duke Energy* was issued, courts in this District have "afford[ed] little weight to a plaintiff's choice of forum in a securities class action" (collecting cases)).

Plaintiffs also argue that they filed in this District for reasons of "strategy and convenience." Response at 7. But Plaintiffs never explain why litigating here is more convenient for anyone other than unnamed securities analysts. Plaintiffs also suggest that they chose this District given its expertise in securities law, but concede elsewhere that the two proposed forums are equally able to apply the governing law. *See id.* at 11, n.7 (conceding that familiarity with governing law is neutral). Plaintiffs' allusions to "strategy" and "convenience" are a euphemism for forum shopping—which further supports diminished deference to their choice of forum. *See Neske v. New York City Dep't of Educ.*, 2021 WL 5712075, at *2 (E.D.N.Y. Dec. 2, 2021) ("Where it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and transfer of venue is appropriate." (citation omitted)).

11

Finally, Plaintiffs attack a strawman by claiming that Defendants suggest "effectively requiring securities cases to be brought only in the defendants' home district." Response at 8. Defendants propose no such rule. *See infra* § II.C. Rather, Defendants respectfully submit that, under this Court's well-established precedent, a securities fraud action without any meaningful connection to this District and concerning statements made from Texas regarding events well outside of this District should be transferred.

### 4.       Convenience of the Parties

The convenience of the parties also weighs heavily in favor of transfer. Plaintiffs' arguments attempting to render the factor neutral are unavailing. *See* Response at 13. First, Plaintiffs suggest that Defendants' convenience should be disregarded because "trials are necessarily disruptive, regardless of forum . . . ." *Id.* But this ignores that the relevant inquiry is which of the two forums would present *more disruption*. *See ChannelAdvisor*, 2015 WL 40646254, at *2 ("[T]he inquiry is which of the two forums is *more* convenient."). This Court has often recognized the benefits to the convenience of Defendants—undisputedly the key witnesses in a securities fraud action—of transfer to their home district and the avoidance of a far-away trial. Op. Br. at 7 (collecting authorities). Plaintiffs attempt to distinguish just one of Defendants' cases, and even that attempt fails. As Plaintiffs say, the *Dell* court transferred an action after finding that "the bulk of the alleged wrongdoing occurred" in the transferee district. Response at 14 (citing *Dell*, 2015 WL 12659925, at *7). But the same is true here and *Dell* confirms it. *Dell*, 2015 WL 12659925, at *6 (transferring action where "Defendants' alleged misrepresentations and omissions [were] the gravamen of th[e] case" and those were "deemed to 'occur' in the district where they [were] transmitted or withheld . . . .").

Plaintiffs also claim that they would be inconvenienced by litigating in Texas, but they never explain why. Response at 13. Indeed, Plaintiffs only go so far as to say that they have

"indicated that the S.D.N.Y. is more convenient for them" by filing this action here. *Id*. But Plaintiffs were not the lead plaintiffs when this action was filed in this District, and they offer no other reason why litigating in New York is convenient for two institutional investors from New Mexico who would be required to travel to *either forum*. Moreover, Plaintiffs never grapple with Defendants' cases holding that Plaintiffs' convenience does not weigh heavily in the analysis given that they are not residents of this District and seek to represent a nationwide class. *See* Op. Br. at 7-8 (collecting authorities); *see also Sheree*, 2019 WL 3252752, at *4 ("[T]he preference of Plaintiff[s]' counsel [to litigate in the SDNY] . . . cannot outweigh the other practical considerations required by 28 U.S.C. § 1404(a)."). Instead, Plaintiffs merely cite cases regarding Plaintiffs' choice of forum, which say nothing about the weight that should be given to considerations of Plaintiffs' convenience here.

Thus, this factor strongly weighs in favor of transfer and Plaintiffs cannot meaningfully contend otherwise.

### 5.    Location of the Documents

As described in Defendants' Motion, the location of relevant documents—if anything—supports transfer. Energy Transfer's key departments and witnesses primarily operate from Dallas, Ratliff Decl. ¶¶ 4-10, and it can reasonably be expected that the material hard-copy and electronic documents are also located there. Plaintiffs do not contend otherwise, nor do they suggest that they will not seek production from the files of the Individual Defendants who work in Dallas or from Energy Transfer's investor relations department which is located there. Instead, Plaintiff seize on a stray line from a copyright infringement case to suggest that, because Defendants supposedly did not "specify the nature and volume of documents" at this early stage, this factor "weights [sic] against transfer." Response at 12 (quoting *Colour & Design v. U.S. Vinyl Mfg. Corp.*, 2005 WL 1337864, at *4 (S.D.N.Y. June 3, 2005)) (emphasis omitted). But Plaintiffs never

explain how this factor could possibly weigh in favor of maintaining this action in this District when Plaintiffs cannot identify *a single relevant document* that is present here.

Instead, this factor supports transfer as "[i]t is well known that . . . securities class actions focus almost entirely on the defendants' conduct." *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998). As such, Defendants will bear the lion's share of the discovery burden which "invariably involves production and review of a vast number of documents, almost all of which are in the defendants' possession." *In re Vivant Solar, Inc. Sec. Litig.*, 2020 WL 7770992, at *3 (E.D.N.Y. Dec. 30, 2020).

### 6. Availability of Process

Defendants noted in their Motion that they are not aware of any third-party witness likely to present attendance challenges, and, therefore, that this factor is neutral. Op. Br. 11. Plaintiffs attempt to spin this factor in their favor, speculating that there may be securities analysts who operate in this district who may be called as witnesses. But Plaintiffs do not identify any "specific witness unwilling to testify" nor do they explain why any individual is likely to present an attendance challenge. Thus, Plaintiffs' argument is insufficient under their own cited authority, in which this Court declined to credit a party's "mere speculation" and found this factor neutral. Response at 17 (citing *Milton*, 2022 WL 3156180, at *9).

### 7. Relative Means of the Parties

As explained in Defendants' Motion, this factor is neutral. Op. Br. at 12. Plaintiffs do not contend otherwise. Response at 11.

### 8. Forum's Familiarity with Governing Law

As explained in Defendants' Motion, this factor is neutral. Op. Br. at 12-13. Plaintiffs do not contend otherwise. Response at 11.

### 9.    Interests of Justice and Efficiency

Perhaps most tellingly, Plaintiffs do not even attempt to argue that the interests of justice and efficiency support denying transfer.  Nor could they.  Far from opposing transfer, where, as here, "there is no material connection between the district and the operative facts, . . . the interests of justice *require* the transfer of [the] action." *Ocean Reef Charters*, 324 F. Supp. 3d at 379 (emphasis added and citation omitted).

Nonetheless, relying on *Stryker*, Plaintiffs claim that this factor is neutral.  Response at 17-18 (citing *Stryker*, 2010 WL 2035130, at *3).  Plaintiffs argue that, in *Stryker*, "all the key witnesses" and "all of the actionable misstatements" were made in the transferee district.  Response at 17-18.  As an initial matter, the same can be said here: every alleged misstatement was made in Texas and every key witness works there.  Ratliff Decl. ¶¶ 3, 5-8, 10.  Moreover, the holding in *Stryker* (which granted a motion to transfer in a securities case) did not rest on a requirement that no underlying activity have occurred outside the transferee district.  To the contrary, like here, the *Stryker*-plaintiffs attempted to obscure the necessity of transfer by arguing that the complaint referenced events that took place in "Massachusetts, New Jersey, and Ireland, the sites of Stryker's alleged failure to comply with federal regulations."  *Stryker*, 2010 WL 2035130, at *3.  But the court rightly rejected this argument because "[t]he gravamen of Plaintiff's complaint is not Stryker's purported regulatory noncompliance, but rather its alleged statements about those issues."  *Id.* ("[T]he locus of operative events in a securities action is where the alleged misrepresentations were made.").  There is no reason for a different result here.

Moreover, Plaintiffs do not, and cannot, distinguish *Dell* or *ChannelAdvisor*, which note that courts in this District "regularly" grant the type of transfer requested here in the interests of

15

justice and efficiency.  *See* Op. Br. at 13.  This Court should follow those decisions and grant

Defendants' Motion.

*   *   *

Taken as a whole, the § 1404 factors weigh strongly in favor of transfer.  Accordingly, the

Court should find that transfer is proper and transfer this action to the Northern District of Texas,

Dallas Division.

### B.    *Milton* Does Not Change the Analysis.

This Court's recent decision in *Milton* does not change this result.  *Milton* was an action

brought by the SEC against a former executive of Nikola for allegedly defrauding investors.

*Milton*, 2022 WL 3156180, at *1-*2.  Although Plaintiffs rely heavily on *Milton*, it involved a very

different situation from the one presented here.  For instance:

- In *Milton*, the SEC "allege[d] that [the d]efendant ***made false and misleading statements from within th[is] District***, for example, in a televised appearance on *Fast Money*, which [was] taped on the floor of the New York Stock Exchange in New York, New York."  *Id*. at *6 (emphasis added).

    - Here, no alleged misstatement occurred in this District.  In fact, all of the alleged misstatements were disseminated from the proposed transferee district.

- The *Milton* plaintiff was the SEC, which had a regional office in this District, rather than a plaintiff representing a putative class.

    - Here, Plaintiffs seek to represent a nationwide class and have no office in this District.

- In *Milton*, the ***defendant consummated a merger with a New York-based company***, which was a "fundamental step to the fraudulent scheme" because it caused Nikola to become publicly traded.  *Id*. at *6 (emphasis added).

    - By contrast, here, Plaintiffs cannot allege that any party transacted any relevant business in this District, much less that any "fundamental step" in any fraudulent scheme occurred in New York.

16

- The *Milton* defendant had ***a criminal trial proceeding in the Southern District of New York***.  The SEC's case was "likely to resemble the criminal proceedings and, therefore, judicial economy weigh[ed] against transfer."  *Id.* at *9.

    o Here, there is no related action proceeding in this District.

- In *Milton*, ***the SEC identified witnesses located in New York*** and "specifie[d] the expected topics of their testimony."  *Id.* at *7.

    o Here, Plaintiffs fail to specifically identify any witness located in New York.

- In *Milton*, the ***defendant's witnesses "all [] requested to have [their] interviews conducted in New York***, defeating [d]efendant's argument that they would be inconvenienced."  *Id.* at *7 (emphasis added).

    o Here, no such facts exist and Defendants strongly contend that proceeding in the Northern District of Texas would be more convenient.

Given these and other critical differences, *Milton* does not help Plaintiffs here.  This Court's decision in *Pluralsight*, 2019 WL 12496341 (Hellerstein, J.)—which did transfer a securities fraud class action to the issuer's home district—presented a far more similar set of facts to those here.

C.    **Plaintiffs' Reference to *Allegheny County* Also Confirms That Transfer is Appropriate.**

Finally, Plaintiffs attempt to highlight *Allegheny County Employees' Retirement System v. Energy Transfer LP*, 2020 WL 1888950 (E.D. Pa. Apr. 16, 2020).  Response at 1.  But that effort falls flat because, there, the Eastern District of Pennsylvania denied Energy Transfer's motion to transfer based on the numerous contacts with the forum state (Pennsylvania) that are conspicuously absent here.  For example:

- The *Allegheny County* action concerned Defendants' alleged misstatements regarding pipeline projects located ***in Pennsylvania***, and which traversed the district in which the action was pending.  2020 WL 1888950, at *1.

- The projects in question were operated by Energy Transfer's subsidiary, Sunoco, which was headquartered ***in Pennsylvania***.  *Id*. at *6.

- The first-named lead plaintiff was domiciled ***in Pennsylvania*** and "represent[ed] Pennsylvanians."  *Id*. at *5.

17

- The subject of many of the alleged misstatements concerned regulatory action by the **Pennsylvania** Department of Environmental Protection and alleged corruption involving **Pennsylvania** Governor Tom Wolf. *Id*. at *1-*2.

- The plaintiffs identified "numerous witnesses involved in the [relevant] project based **in Pennsylvania**, such as [Pennsylvania] officials involved in the Mariner East permitting process." *Id*. at *6.

- "Proper oversight of the [relevant] pipeline [was] an issue of specific concern in [the Eastern District of Pennsylvania.]." *Id*. at *7. And "**Pennsylvania** ha[d] a strong public interest in having judges sitting [there] preside in cases alleging malfeasance involving the Commonwealth and its actors." *Id*.

In short, *Allegheny County* presented myriad touch points with the plaintiffs' chosen forum. That is exactly what Plaintiffs lack here—and what compels transfer. Moreover, *Allegheny County* was decided in the Eastern District of Pennsylvania, where Defendants could not rely on the significant body of case law developed in this Circuit that favors transfer of securities actions to the location of the defendant-company's headquarters. Thus, the decision in *Allegheny County* does not support Plaintiffs.

## III.    CONCLUSION

For the reasons set forth above and in Defendants' Opening Brief, Defendants respectfully request that this Court grant their Motion, and transfer this action to the United States District Court for the Northern District of Texas, Dallas Division.

Dated:  October 28, 2022

VINSON & ELKINS LLP

  */s/ Christopher E. Duffy*
Christopher E. Duffy
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 237-0000
cduffy@velaw.com

Michael Holmes (*pro hac vice* application forthcoming)
Craig E. Zieminski (*pro hac vice* application forthcoming)
Robert Ritchie (*pro hac vice* application forthcoming)
Meredith Jeanes Lyons (admitted *pro hac vice*)
Trammel Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
mholmes@velaw.com
czieminski@velaw.com
rritchie@velaw.com

*Attorneys for Defendants*

19

## CERTIFICATE OF SERVICE

I, Meredith Jeanes Lyons, certify that on October 28, 2022, true copies of the foregoing

were served on all counsel of record via the Court's ECF system.

/s/ *Meredith Jeanes Lyons*
Meredith Jeanes Lyons